IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LYLE VANDER SCHAAF, Personal Representative of the Estate of GREGORY VANDER SCHAAF, deceased, | ) ) ) ) | |
|     Plaintiff, | ) ) | |
| v. | ) ) | 07 C 6555 |
| MIDWEST TRANSFER & LOGISTICS, LLC and MARK RHODES, | ) ) ) | |
|     Defendants. | ) | |

**MEMORANDUM AND ORDER**

Lyle Vander Schaaf, the personal representative of the estate of Gregory Vander Schaaf ("Gregory's Estate") brought this action pursuant to the Illinois Wrongful Death Act against Midwest Transfer & Logistics, LLC and Mark Rhodes.[1] Gregory was survived by his mother, siblings and son. The defendants filed a motion to strike, contending that the complaint's references to relatives who survived Gregory, other than his son, were irrelevant because these relatives are ineligible beneficiaries under the Wrongful Death Act. Because it appeared that the motion to strike was unopposed, the court granted it. Gregory's Estate filed a timely motion to reconsider. For the following reasons, after considering the issue afresh, the motion to reconsider is granted, and the court denies the motion to strike.

**I.    Background**

    **A.    Facts**

The following facts are drawn from the second amended complaint filed by Gregory's

---

[1] The court will refer to the members of the Vander Schaaf family by their first names to avoid any confusion.

Estate and are accepted as true for purposes of the motion to strike.[2] On April 19, 2006, Gregory Vander Schaaf, a South Dakota citizen, was killed in a two-vehicle accident involving a vehicle driven by Mark Rhodes on Route 20 near Coral, Illinois. At the time of the accident, Mr. Rhodes was operating a vehicle in the course and scope of his employment with Midwest, a limited liability corporation. Midwest's sole managing member is American Wood Recycling, Inc. an Illinois corporation with its principal place of business in Illinois.

Gregory was survived by Lyle Vander Schaaf (his brother), Kara Donoghue and Lynnette Vander Schaaf (his sisters), Marilyn Vander Schaaf (his mother), and Stephen Sorgatz (his biological son, who had been adopted by the husband of Stephen's biological mother).[3] Following the accident, Gregory's Estate, through its personal representative Lyle Vander Schaaf, filed this action against Midwest and Mr. Rhodes under the Wrongful Death Act.

B. **Procedural Posture**

This action was initially assigned to the late Judge James Moran. On February 23, 2009, Gregory's Estate filed its second amended complaint. Subsequently, on March 17, 2009, the defendants moved to strike the portions of the second amended complaint which refer to

---

[2] A court will not consider matters outside the pleadings when considering a motion to strike. *See, e.g., Carter v. Stanton*, 405 U.S. 669, 671 (1972). Therefore, the court will limit its review to allegations that appear in the second amended complaint.

[3] In its second amended complaint, Gregory's Estate refers to Gregory's son as "Stephen Tovar, his son who was adopted by Stephen's natural mother's husband." Pl.'s Compl. [Doc. 45] at 3, ¶ 9. In contrast, the defendants refer to Stephen as "Stephen Sorgatz" based on the fact that his natural mother (Candice Tovar) married Mark Sorgatz, who adopted Stephen. *See* Defs.' Mem. [Doc. 38] at 4. The court need not delve into the veracity of the defendants' assertion that Stephen legally changed his last name. Instead, for the purposes of the motion presently before the court, it suffices to note that Stephen Tovar and Stephen Sorgatz are the same person. For the sake of consistency, the court will refer to Stephen as Stephen Sorgartz throughout this order.

Gregory's survivors other than Stephen. During 2009, several of the court's colleagues entered orders on Judge Moran's behalf while he was on leave. Judge St. Eve ordered Gregory's Estate to respond to the motion to strike by April 22, 2009, and set a status date on June 3, 2009. According to Gregory's Estate, the parties expected the case to be transferred back to Judge Moran shortly after the status. Following Judge Moran's death, however, Judge St. Eve struck the June 3, 2009, status date and the case was reassigned to this court.

As a result, it appears there was a misunderstanding surrounding the submission dates for the response to the motion to strike. The parties disagree as to whether they agreed to an extension amongst themselves (a practice not permitted by this court, to avoid situations like the present one and because the parties cannot unilaterally alter dates set by the court). Regardless, this court reviewed the file when the case was reassigned to it, and believed that the motion to strike was unopposed. It thus granted the motion on May 1, 2009, stating:

> This case was recently reassigned to this court. The defendants' motion to strike portions of the second amended complaint is before the court. The plaintiffs' response was due on April 22, 2009, and they did not file a response so the court will rule without the benefit of their views. The parties agree that Illinois law controls. As a matter of basic probate law, the decedent's mother or siblings may not recover under the Illinois Wrongful Death Act given the existence of a surviving descendant and the lack of a surviving spouse. Thus, the motion to strike [51] is granted, and all portions of the complaint indicating that the decedent's mother or siblings may recover are stricken.

Docket No. 56.

On May 15, 2009, Gregory's Estate filed a motion to reconsider the May 1st order, and the court set a briefing schedule. The fully briefed motion to reconsider is presently before the court.

3

## II. Discussion

### A. Jurisdiction and Choice of Law

The court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are completely diverse and the amount in controversy exceeds $75,000. In a diversity case, a federal court applies state substantive law and federal procedural law. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). The parties agree that Illinois law controls the substantive issues in this dispute. *See* Docket Nos. 47 & 49 (parties' position papers regarding choice of law). Therefore, the court will apply Illinois law without conducting a choice of law analysis. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies").

### B. Motion to Vacate

In light of this case's unusual procedural posture and the potential for confusion arising from the loss of the court's esteemed former colleague, Judge Moran, the court vacates the May 1, 2009, order granting the defendants' motion to strike. It will consider this issue afresh based on the entire record, including Gregory's Estate's response to the motion to strike.

### C. Motion to Strike

#### 1. Legal Standard

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Whether to grant a motion to strike is within the discretion of the trial court. *See e.g.*, *Talbot v. Robert Matthews Dist. Co.*, 961 F.2d 654, 665 (7th Cir. 1992). The Seventh Circuit has cautioned attorneys against moving to strike allegations in a complaint unless the presence of the

allegations causes actual prejudice.  *See Davis v. Ruby Foods, Inc.*, 269 F.3d 818 (7th Cir. 2001).  Prejudice exists "where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F. Supp. 2d 1006, 1009 (N.D. Ill. 1998).

### 2. Is a Rule 12(f) Motion to Strike Appropriate?

Midwest and Rhodes seek to strike all reference to Gregory's siblings and mother from the second amended complaint, contending that they are not proper beneficiaries under the Wrongful Death Act.  The defendants' position flows from the fact that the parties agree that damages potentially owed pursuant to the Wrongful Death Act may be greater if the estate has more than one beneficiary.  In response, Gregory's Estate asserts that a motion to strike is an improper procedural vehicle to dismiss allegedly ineligible beneficiaries.  However, the court need not determine whether a motion to strike is a proper method to remove ineligible beneficiaries from a complaint in a wrongful death claim because it finds the references to Gregory's siblings and mother in the second amendment do not prejudice the defendants.

The only reference to Lyle, Kara, Lynnette and Marilyn in the second amended complaint provides:  "Gregory Vander Schaaf, deceased, left surviving him: Lyle Vander Schaaf, his brother; Kara Donoghue, his sister; Lynnette Vander Schaaf, his sister; Marilyn Vander Schaaf, his mother; and Stephen Tovar, his son who was adopted by Stephen's natural mother's husband."  Pl.'s 2d Am. Compl. [Doc. 45] ¶ 9 of Count I & ¶ 7 of Count II.  This sentence is part of the narrative of the events surrounding Gregory's death.  It does not provide details of Lyle, Kara, Lynnette and Marilyn's relationship with Gregory or any losses allegedly suffered after his death.  It also does not imply that Lyle, Kara, Lynnette and Marilyn are the

5

eligible beneficiaries under the Wrongful Death Act.  Accordingly, the mere identification of Lyle, Kara, Lynnette and Marilyn as survivors does not confuse the issues in this case or subject Midwest and Rhodes to an undue burden of additional discovery.

In addition, if this allegation remains in the complaint, the defendants may still attempt to limit the introduction of evidence regarding the nature of the relationship between Gregory and his survivors or any losses that survivors who are not eligible beneficiaries under the Wrongful Death Act suffered due to Gregory's death.  *See e.g. Sallenger v. City of Springfield*, No. 03-3093, 2007 WL 2769679, at *2 (C.D. Ill. Sept. 19, 2007) (granting motion in limine to bar evidence of losses suffered by another survivors who are not eligible beneficiaries under the Wrongful Death Act).  Therefore, the reference is not prejudicial so the defendants' motion to strike is denied.

### D. Motion for Leave to Amend

In its response to Midwest and Rhodes' motion to strike, Gregory's Estate devotes the vast majority of its argument (fifty-eight out of seventy lines of text) to an issue based on facts not contained in the second amended complaint.  According to the response, on May 28, 2009, Stephen executed a disclaimer of his interest in the wrongful death claim brought by Gregory's Estate.  *See* Pl.'s Resp. [Doc. 61] at 6.  Midwest and Rhodes also devoted a substantial portion of its reply to the disclaimer issue.  *See* Defs.' Reply [Doc. 62] at 2-7 (devoting nearly four out of five pages of their argument to the disclaimer issue).

The alleged disclaimer occurred after the filing of the second amended complaint and the defendants' motion to strike, as well as after the court's May 1st order granting the motion to strike.  As all information regarding Stephen's disclaimer is not contained in the pleadings, the

6

court did not consider the disclaimer when evaluating Midwest and Rhodes' motion to strike. *See supra* note 2.

However, Gregory's Estate's response also sought leave to file an amended complaint. Pl.'s Resp. [Doc. 61] at 2 ("To any extent this court determines that plaintiff should clarify matters by filing an amended complaint, plaintiff would seek leave to do so."). In light of the parties' extensive discussion about Stephen's disclaimer and to conserve the resources of the court and the parties, the court will consider Gregory's Estate's response as a request for leave to amend its complaint.

### 1. Standard for a Motion to Amend

Whether to grant a motion to amend is within the discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Under this standard, leave should be granted "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182.

### 2. Delay in Seeking Leave to Amend & Prejudice

It is "within a district court's discretion to deny an amendment to the pleadings for delay and prejudice to the opposing party." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1379 (7th Cir. 1990). Stephen allegedly executed the disclaimer on May 28, 2009. *See* Pl.'s Resp. [Doc 61] at 6; Defs.' Reply [Doc. 62] at 1. The next day, Gregory's Estate filed its response brief, which included information regarding Stephen's disclaimer and sought leave

to amend in light of the new information. Only one day passed between the alleged disclaimer and Gregory's Estate notification of the court and other parties of the changed circumstances and its request to amend the complaint. Thus, the movant did not delay in seeking leave to amend.

Moreover, the record fails to convince the court that allowing the amendment will cause the defendants to suffer undue prejudice. An amendment causes undue prejudice when it "'brings in entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint' and when the additional discovery is expensive and time-consuming." *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1046 (N.D. Ill. 2007) (citations omitted). To determine whether undue prejudice exists, courts balance each party's interests by considering "the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted." *In re Ameritech Corp. v. Computer Syss. Solutions, Inc.*, 188 F.R.D. 280, 283 (N.D. Ill. 1999), *quoting* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Practice & Procedure* § 1487 (1990).

Here, the court cannot fault Gregory's Estate for not mentioning the disclaimer sooner, as it was executed on May 28, 2009, two months after the second amended complaint was filed. Moreover, the disclaimer is clearly relevant as it potentially affects the identity of the estate's beneficiaries. Next, the fact that the disclaimer may not be in the defendants' financial best interest does not affect whether it should properly be part of the record. Finally, despite the amount of time this action has been pending, it has not progressed substantially due to Judge

Moran's death. Thus, the court finds that allowing an amendment will not cause undue prejudice.

### 3. Is Amendment Futile?

The court next considers whether amending the complaint would be futile because it fails to state a valid theory of liability or the amended allegations cannot withstand a motion to dismiss. *See Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). To resolve this issue, the court must determine whether Illinois law allows Stephen to disclaim his interest in a wrongful death claim and thereby alter the class of eligible beneficiaries.

The Probate Act provides:

> (a) Right to Disclaim Interest in Property. A person to whom any property or interest therein passes, by whatever means, may disclaim the property or interest in whole or in part by delivery or filing a written disclaimer
>
> ***
>
> (d) Effect of disclaimer. [T]he property, part or interest disclaimed shall descend or be distributed (1) if a present interest (a) *in the case of a transfer by reason of the death of any person, as if the disclaimant had predeceased the decedent* . . . .

755 ILCS § 5/2-7 (emphasis added).

Thus, based on the plain language of the Probate Act, Stephen's disclaimer meant that he was not legally alive at the time of Gregory's death for the purposes of intestate succession. *See Morris v. William L. Dawson Nursing Ctr., Inc.*, 187 Ill. 2d 494, 497-99 (Ill. 1999) (intestate succession rules provide the means to identify eligible beneficiaries in a Wrongful Death Act action). Because, by operation of law, Gregory's only child predeceased him, Lyle, Kara, Lynnette and Marilyn were Gregory's next of kin at the time of his death. See § 755 ILCS § 5/2-1(d). Thus, they are eligible beneficiaries under the Wrongful Death Act. This means that allowing an amendment to add allegations

9

about the disclaimer would not be futile and, in fact, would add highly relevant information.

The court acknowledges that the defendants contend that the disclaimer is ineffective, so Stephen is the only beneficiary. For the following reasons, the court disagrees. First, Midwest and Rhodes assert that a wrongful death claim is not an asset of the decedent's estate which may be disclaimed. Section 2.1 of the Wrongful Death Act, however, explicitly references a wrongful death claim as being an asset of the decedent's estate. *See* 740 ILCS 180/2.1 ("In the event that the only asset of the deceased estate is a cause of action arising under this Act . . . ."); *see also In re Estate of Savio*, 388 Ill. App. 3d 242, 248-49 (3d Dist. 2009) (a wrongful death claim is an asset of a decedent's estate, except for the purpose of satisfying the claims of creditors)*; Bender v. Eiring*, 378 Ill. App. 3d 811, 815 (1st Dist. 2008) (a wrongful death claim, including a parent's claims for loss of society, is an asset of the decedent's estate which may be disclaimed), *appeal denied by* 228 Ill.2d 529 (Ill. 2008).

Second, the defendants contend that the disclaimer section of the Probate Act cannot alter the determination of next of kin under the Wrongful Death Act because it is a statute of descent and distribution and thus can only alter the distribution of the claim but cannot change the identity of eligible beneficiaries. This argument is unpersuasive, as the Illinois Supreme Court has consistently held that the Probate Act determines the next of kin for purposes of the Wrongful Death Act. *See e.g.*, *Morris*, 187 Ill. 2d at 498-99 (noting that the Illinois legislature has "manifestly retained the laws of intestacy as the means for identifying the members of the class"). Similarly, Illinois courts consistently

look to the Illinois Probate Act to identify a decedent's next of kin for purposes of the Wrongful Death Act. *See id*. at 497-98 (applying § 2-1, Descent and Distribution); *In re Estate of Jackson*, 334 Ill. App. 3d 835, 778 (1st Dist. 2002) (considering § 2-6.5, Parental Neglect); *Johnson v. Provena St. Therese Medical Ctr.*, 334 Ill.App.3d 581, 590 (2d Dist. 2002) (applying § 2-3, Posthumous Child, to hold sibling born after decedent's death could not be a beneficiary under the Wrongful Death Act); *Miller v. Kramarczyk*, 306 Ill.App.3d 731, 714 (2d Dist. 1999) (noting § 2-6, Person Causing Death, bars recovery under Wrongful Death Act by surviving spouses who intentionally and unjustifiably caused the decedent's death); *Dotson v. Sears, Roebuck & Co.*, 157 Ill.App.3d 1036, 1048 (1st Dist. 1987) (finding § 2-2, Children Born Out of Wedlock, prevented surviving fathers of illegitimate children from recovering for their children's deaths under the Wrongful Death Act).

Third, Midwest and Rhodes take issue with Gregory Estate's citation to *Bender* in support of the proposition that posthumous disclaimers are effective. *See* 378 Ill. App. 3d at 815. In *Bender*, the decedent's parents executed disclaimers after the decedent's death. *Id*. at 812-813. The court held that "the parents' disclaimers, in which they renounced any interest in the decedent's estate and were deemed to have predeceased the decedent with respect to the assets of her estate, apply here to bar the parents from recovering for loss of society damages." *Id*. at 815.

According to the defendants, *Bender* is inapplicable because while it barred the parents' recovery, it did not "elevate other heirs to a position of recovery where otherwise none would have existed." Defs.' Reply [Doc. 62] at 5. This interpretation of

11

*Bender* is incorrect. The *Bender* court may not have explicitly discussed the identity of any beneficiaries stepping into the place of the decedent's parents. However, since the *Bender* court removed the parents, the next beneficiary in line under the Probate Act would necessarily become the actual beneficiary and thus able to recover.

Finally, the defendants argue that the court should not consider Stephen's disclaimer because changes to beneficiaries that result in an increase in damages paid to the beneficiaries are fraudulent and contrary to the policies underlying the Wrongful Death Act. This court is obligated to apply existing law which, as discussed above, allows posthumous disclaimers. To the extent that the defendants believe that a change in existing law is warranted, the Illinois legislature, not this court, is the proper audience. The defendants' policy arguments are thus unavailing.

**III.    Conclusion**

For the above reasons, the plaintiff's motion to reconsider [#57] is granted, and the motion to strike [#51] is denied. In addition, the plaintiff is granted leave to file an amended complaint by December 1, 2009. The defendants shall answer or otherwise plead by December 22, 2009. This matter is set for status on January 7, 2010, at 11:00 a.m.


DATE:   November 6, 2009                    _____
                                            Blanche M. Manning
                                            United States District Judge