IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LYLE VANDER SCHAAF, Personal )
Representative of the Estate of GREGORY )
VANDER SCHAAF, deceased, )
    Plaintiff, )
)
    v. ) 07 C 6555
)
MIDWEST TRANSFER & LOGISTICS, )
LLC and MARK RHODES, )
    Defendants. )

## MEMORANDUM AND ORDER

This order addresses the latest effort of defendants Mark Rhodes (who was driving a truck that was involved in a collision that resulted in the death of Gregory Vander Schaaf on April 19, 2006) and Midwest Transfer & Logistics (Mr. Rhodes' employer) to limit the amount of damages potentially recoverable by Mr. Vander Schaff's estate. The defendants' motion in limine seeking to exclude evidence of loss of society damages by anyone other than Stephen Sorgatz (also known as Stephen Tovar) is before the court. For the following reasons, the defendants' motion is denied.

### Background

On April 19, 2006, Gregory Vander Schaaf, a South Dakota citizen, was killed in a two-vehicle accident involving a vehicle driven by Mark Rhodes on Route 20 near Coral, Illinois. At the time of the accident, Mr. Rhodes was operating a vehicle in the course and scope of his employment with Midwest, a limited liability corporation. Midwest's sole managing member is American Wood Recycling, Inc., an Illinois corporation with its principal place of business in Illinois.

Gregory was survived by Lyle Vander Schaaf (his brother), Kara Donoghue and Lynnette Vander Schaaf (his sisters), Marilyn Vander Schaaf (his mother), and Stephen Sorgatz (his biological son, who had been adopted by the husband of Stephen's biological mother).[1] Following the accident, in November of 2007, Gregory's Estate, through its personal representative Lyle Vander Schaaf, filed this diversity action against Midwest and Mr. Rhodes under the Illinois Wrongful Death Act.

In May of 2009, Stephen executed a disclaimer to his rights in Gregory's Estate which renounced his interest in Gregory's Estate. The identity of the beneficiaries is a critical one in this case, as the measure of loss of society damages for Stephen (who had no relationship with Gregory) and Gregory's mother/siblings (who had a relationship with Gregory) is different.

The defendants filed a motion to strike references to Gregory's siblings and mother from the second amended complaint, contending that Stephen – not the mother/siblings – is the proper beneficiary under the Illinois Wrongful Death Act. The parties then briefed the effect of the disclaimer under Illinois law. On November 6, 2009, the court issued an order addressing the intersection of the Illinois Probate Act and the Illinois Wrongful Death Act in connection with the disclaimer. The court denied the motion to strike, stating:

> The only reference to Lyle, Kara, Lynnette and Marilyn in the second amended complaint provides: "Gregory Vander Schaaf, deceased, left surviving him: Lyle Vander Schaaf, his brother; Kara Donoghue, his sister; Lynnette Vander Schaaf, his sister; Marilyn Vander Schaaf, his mother; and Stephen Tovar, his son who was adopted by Stephen's natural mother's husband." Pl.'s 2d Am. Compl. [Doc. 45] ¶ 9 of Count I & ¶ 7 of Count II. This sentence is part of the narrative of the events surrounding Gregory's death. It does not provide details of Lyle,

---

[1] The court will refer to the members of the Vander Schaaf family by their first names to avoid any confusion.

> Kara, Lynnette and Marilyn's relationship with Gregory or any losses allegedly suffered after his death. It also does not imply that Lyle, Kara, Lynnette and Marilyn are the eligible beneficiaries under the Wrongful Death Act. Accordingly, the mere identification of Lyle, Kara, Lynnette and Marilyn as survivors does not confuse the issues in this case or subject Midwest and Rhodes to an undue burden of additional discovery.
>
> In addition, if this allegation remains in the complaint, the defendants may still attempt to limit the introduction of evidence regarding the nature of the relationship between Gregory and his survivors or any losses that survivors who are not eligible beneficiaries under the Wrongful Death Act suffered due to Gregory's death. *See e.g. Sallenger v. City of Springfield*, No. 03-3093, 2007 WL 2769679, at *2 (C.D. Ill. Sept. 19, 2007) (granting motion in limine to bar evidence of losses suffered by another survivors who are not eligible beneficiaries under the Wrongful Death Act). Therefore, the reference is not prejudicial so the defendants' motion to strike is denied.

Dkt. 65 at 6.

The court also permitted Gregory's Estate to amend the complaint to add references to the disclaimer, based on its conclusion that amendment would not be futile because Illinois law (specifically, the Illinois Probate Act and the Illinois Wrongful Death Act) allowed Stephen to disclaim his interest in a wrongful death claim and thereby alter the class of eligible beneficiaries. Specifically, the court explained:

> Thus, based on the plain language of the Probate Act, Stephen's disclaimer meant that he was not legally alive at the time of Gregory's death for the purposes of intestate succession. *See Morris v. William L. Dawson Nursing Ctr., Inc.*, 187 Ill. 2d 494, 497-99 (Ill. 1999) (intestate succession rules provide the means to identify eligible beneficiaries in a Wrongful Death Act action). Because, by operation of law, Gregory's only child predeceased him, Lyle, Kara, Lynnette and Marilyn were Gregory's next of kin at the time of his death. See § 755 ILCS § 5/2-1(d). Thus, they are eligible beneficiaries under the Wrongful Death Act. This means that allowing an amendment to add allegations about the disclaimer would not be futile and, in fact, would add highly relevant information.

*Id*. at 9-10.

On June 22, 2010, the parties appeared for a status. The defendants' counsel indicated he intended to file a motion in limine seeking to limit the class of eligible beneficiaries to Stephen based on page 6 of the court's order. According to the defendants' counsel, the court left the issue of the identity of beneficiaries open. The court disagreed and clarified that its reference to the possibility of limiting evidence meant the parties could file motions in limine addressing issues such as foundation, but did not mean that the court was open to revisiting the issue of the identity of the beneficiaries. *See* Dkt. 95.

On June 24, 2010, the court issued another order following up on the June 22 status stating:

> In reflecting on the 6/22/2010 status, the defendants' reference to page 6 of the court's prior order addressing beneficiaries (Dkt. 65) may have been based on the position that damages should be measured based on the son's [Stephen's] loss, not the parent/siblings' loss. If this is the case, the court agrees that prompt resolution of this issue will help the parties prepare the remainder of their pretrial submissions, so the defendants shall file a motion in limine addressing this issue . . .

Dkt. 96.

In response to this order, the defendants filed a motion in limine raising the following arguments: (1) South Dakota law governs the disclaimer issue, and they should not be held to their position paper agreeing that Illinois law controls; (2) Stephen's disclaimer is invalid under South Dakota's Probate Act, South Dakota Codified Law § 29A-2-801(b), because it was not filed in South Dakota, where it was executed; (3) even if Stephen filed the disclaimer, it would still be ineffective under South Dakota's Probate Act, South Dakota Codified Law § 29A-2-801(j); (4) alternatively, under Illinois law, the disclaimer is invalid because it was untimely.

## Choice of Law

The court begins with choice of law. The defendants filed a position paper before Stephen executed the disclaimer. In their position paper, the defendants agreed with Gregory's Estate that Illinois law controlled substantive issues in this diversity action. The parties then briefed the issue of whether the disclaimer was valid, applying Illinois law. Notably, at that time, the defendants neither asked the court to revisit the choice of law issue nor raised any of the South Dakota law arguments featured in the motion in limine presently before the court. The defendants also did not attempt to contest the validity of the disclaimer. Instead, they accepted that the disclaimer was legitimate and made numerous arguments about its effect based on Illinois law. The court thus analyzed the disclaimer under the Illinois Probate and Wrongful Death Acts.

The defendants' effort to turn to the law of a different jurisdiction, after receiving an adverse decision in November of 2009 based on Illinois law, is improper given this case's procedural posture. The same can be said for their arguments about Stephen's alleged failure to file the disclaimer as purportedly required by South Dakota law. The defendants do not contend, and the record does not support, a finding that the defendants could not have raised their arguments about South Dakota law earlier, or that any impediment blocked them from seeking to withdraw their stipulation that Illinois law applied.

Accordingly, to the extent that the defendants seek reconsideration of the court's prior order treating the disclaimer as valid and addressing its effect under Illinois law, their request is improper, as "[a]rguments raised or developed for the first time in a motion to reconsider are generally deemed forfeited." *Pole v. Randolph*, 570 F.3d 922, 938 (7th Cir. 2009). Parties who

receive an adverse ruling are not entitled to a mulligan, as the rules do not contemplate multiple rounds of motions relitigating the same subject on different grounds.

The law of the case doctrine also stands in the way of the defendants' attempt to abandon their stipulation that Illinois law governs this dispute and challenge the disclaimer on grounds they could have, but did not, raise before. Under this doctrine, the general rule is that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *United States v. Story*, 137 F.3d 518, 520 (7th Cir. 1998) (internal quotations omitted). The court may, in its discretion, revisit an issue that it decided earlier in the litigation. *Id*. However, barring "an intervening change in the law, or some other special circumstance," courts generally do not do so. *Id*.; *see also EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005).

The defendants attempt to litigate the disclaimer issue afresh, but have not established that they could not have raised their South Dakota arguments earlier. The defendants had a full and fair opportunity to present whatever arguments they wanted to raise regarding the disclaimer, and cannot use a motion in limine as a vehicle to begin defense of a case from scratch, based on arguments that could have been raised before. This is especially true mere weeks before the pretrial order is due and trial is set to commence.

Moreover, Gregory's Estate seeks relief under the Illinois Wrongful Death Act, and the Illinois Supreme Court has consistently held that the Illinois Probate Act determines the next of kin for purposes of the Illinois Wrongful Death Act. *See e.g.*, *Morris v. William L. Dawson Nursing Ctr., Inc.*, 187 Ill. 2d 494, 498-99 (Ill. 1999) (intestate succession rules in the Illinois

Probate Act are used to identify eligible beneficiaries in an action brought under the Illinois Wrongful Death Act).

Thus, the court finds that the defendants' arguments about South Dakota probate law are unavailing. Accordingly, the court will, consistent with the parties' stipulation and its prior orders, continue to apply Illinois law.

## Measure of Damages

The last few pages of the defendants' memorandum address the issue the court directed the parties to brief. First, the defendants contend that the court improperly relied on the Illinois Appellate Court's decision in *Bender v. Eiring*, 378 Ill. App. 3d 811, 815 (1st Dist. 2008). The court held that:

> . . . Midwest and Rhodes take issue with Gregory Estate's citation to *Bender* in support of the proposition that posthumous disclaimers are effective. *See* 378 Ill. App. 3d at 815. In *Bender*, the decedent's parents executed disclaimers after the decedent's death. *Id*. at 812-813. The court held that "the parents' disclaimers, in which they renounced any interest in the decedent's estate and were deemed to have predeceased the decedent with respect to the assets of her estate, apply here to bar the parents from recovering for loss of society damages." *Id*. at 815.
>
> According to the defendants, *Bender* is inapplicable because while it barred the parents' recovery, it did not "elevate other heirs to a position of recovery where otherwise none would have existed." Defs.' Reply [Doc. 62] at 5. This interpretation of *Bender* is incorrect. The *Bender* court may not have explicitly discussed the identity of any beneficiaries stepping into the place of the decedent's parents. However, since the *Bender* court removed the parents, the next beneficiary in line under the Probate Act would necessarily become the actual beneficiary and thus able to recover.

Dkt. 65 at 11-12.

The defendants raise the rather cryptic argument that "*Bender* never alluded to nor did it hold that based on the disclaimer now evidence of other heirs' not originally considered 'next of

-7-

kin' under the Wrongful Death Act relationship with the decedent to be considered. If indeed that was to be the case, summary judgment would not have been appropriate for it would be an evidentiary issue. To grant summary judgment, the class of the next of kin must necessarily be closed otherwise a dispositive ruling would be inappropriate." Dkt. 98 at 13.

The defendants appear to be arguing that *Bender* only approved disclaimers that elevate next of kin who were in the same class of beneficiaries as the disclaiming next of kin. Under this view of the world, if siblings X and Y were beneficiaries, Y could disclaim, leaving X to receive 100%, but X and Y cannot disclaim and allow someone who was not a beneficiary at the time of the decedent's death (*e.g.*, a parent) to inherit. Unfortunately for the defendants, the court does not read *Bender* so narrowly. It is true that the beneficiary classes in *Bender* and the case presently before the court are different. However, the *Bender* court did not draw the distinction urged by the defendants, and the court declines to create such a distinction out of wholecloth.

The defendants' citation to *Boatmen's Nat. Bank of Belleville v. Direct Lines, Inc.*, 167 Ill.2d 88 (Ill. 1995), is also unhelpful. In that case, the decedent's spouse disclaimed any interest in his deceased wife's estate in an attempt to allow the wife's parents and siblings to inherit. The Illinois Supreme Court held that because the estate had proceeded with a complaint naming the spouse as the beneficiary, it waived its ability to argue on appeal that the parents/siblings should have recovered. *Id*. at 99-100. Based on its finding of waiver, the Illinois Supreme Court did not opine on the issue presently before this court.

The defendants state that "[a]lthough the Illinois Supreme Court refrained from addressing this issue, it was certainly within the Court's authority to comment on the trial court's substantive analysis with respect to the legal effect of the disclaimer. Accordingly, the only

Illinois precedent with respect to the evidentiary effect of a disclaimer in altering the class of actual beneficiaries to a decedent's estate supports Defendant's position." Dkt. 98 at 14. The court disagrees. As with the *Bender* case, the court will not read analysis into the *Boatmen's* decision that simply is not there.

This leaves the defendants' suggestion that the court should adopt the reasoning of the Supreme Court of Vermont, who considered a similar issue. *Quesnel v. Town of Middlebury*, 167 Vt. 252 (Vt. 1997). In that case, the Supreme Court of Vermont held that the decedent's wife and child could not disclaim their interest in the decedent's wrongful death recovery to allow the decedent's parents to recover. *Id*. at 256. The *Quesnel* court based this conclusion on 14 V.S.A. §§ 1492(b, c), which set forth a specific order of succession for beneficiaries. It thus found that "[u]nder the [Vermont Wrongful Death Act], damages are based on the loss suffered by the spouse and the next of kin, the child in this case. *See* 14 V.S.A. § 1492(b). Beneficiaries, designated by § 1492(c), cannot by disclaimer change the loss for which defendants are liable under § 1492(b)." *Id*.

The Vermont Probate Act is not substantively similar to the Illinois Probate Act. Thus, a case relying on a different statute is unpersuasive. This leaves the court's prior finding that the Illinois Probate Act determines the next of kin for purposes of the Wrongful Death Act, and that based on the plain language of the Probate Act, Stephen's disclaimer meant that he was not legally alive at the time of Gregory's death for the purposes of intestate succession. Dkt. 65 at 9-11.

The Illinois Probate Act allows revisionist history because it deems Stephen legally dead at the time of Gregory's death based on the disclaimer executed by Stephen after Gregory died.

Because Stephen is considered legally dead as of the time of Gregory's death (even though he was in fact alive at that time), other legal consequences flow from Stephen's fictional death – *i.e.*, Gregory's parent/siblings are deemed the beneficiaries once Stephen is deemed to have predeceased Gregory. *See Miller v. Kramarczyk*, 306 Ill.App.3d 731, 734 (2d Dist. 1999) (acknowledging that under the Illinois Probate Act, if a surviving spouse is deemed to predecease the decedent's death, "if the decedent leaves no descendants, her parents may inherit from her estate making them her 'next of kin' under the Act") (internal citations omitted).

Moreover, the Illinois Probate Act provides that after a disclaimer, "the property, part or interest disclaimed shall descend or be distributed (1) if a present interest (a) *in the case of a transfer by reason of the death of any person, as if the disclaimant had predeceased the decedent . . . . and in each case the disclaimer shall relate back to such date for all purposes.*" 755 ILCS § 5/2-7(d) (emphasis added). Since under the Probate Act, Stephen is deemed to have predeceased Gregory, there is no basis to substitute the parent/siblings in as beneficiaries but cap their loss of society damages at what Stephen could have recovered. Setting such a cap would be at odds with the plain language of the statute, which directs that the court treat Stephen as if he predeceased Gregory for all purposes. *See In re Atchison*, 925 F.2d 209, 211 (7th Cir. 1991) (after daughter disclaimed a testamentary gift that passed to her upon her father's death, "the property passed as if [the daughter] had predeceased her father and the disclaimer related back to the date of his death 'for all purposes'" so "the effect of the disclaimer was to prevent [the daughter] from ever acquiring an interest in the property"), *quoting* 755 ILCS § 5/2-7(d).

Accordingly, the court concludes that Gregory's parent/siblings are the beneficiaries, and that the Illinois Probate Act, by allowing post-death disclaimers, also allows post-death changes

in beneficiaries, even if the new beneficiaries could not take at the time of the decedent's death. In other words, the court declines to measure wrongful death damages using the loss of society of people who are deemed to be predeceased as a matter of law. This means that Gregory's Estate may seek damages based on the loss suffered by Gregory's parent/siblings, and that their loss will not be limited to damages that could have been recovered by Stephen as of the time of Gregory's death.

## Conclusion

For the above reasons, the defendants' motion in limine seeking to exclude evidence of loss of society damages by anyone other than Stephen Sorgatz [#97] is denied.

DATE: July 8, 2010

                                                Blanche M. Manning